657 A.2d 1242

**DOLLAR BANK, a Federal Savings Bank, Appellant,**

v.

**Myron R. SWARTZ and Laurel F. Swartz, Appellees.**

Supreme Court of Pennsylvania.

Argued March 7, 1995.

Decided May 11, 1995.

Timothy M. Slavish, Edward O'Connell, Thorp, Reed & Armstrong, Bruce V. Hicks, Pittsburgh, for appellant.

Bruce M. Campbell, James A. Lewis, Plowman, Spiegel & Lewis, P.C., Pittsburgh, for appellees.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE, and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

In this mortgage foreclosure action brought by a bank against guarantors of a commercial loan to a new corporation, we are faced with interrelated issues involving the perfection of security interests under the Uniform Commercial Code, involuntary bankruptcy of the primary debtor, the impairment of obligations, and the interpretation of contract language requiring "reasonable" efforts by the bank to collect the debt

from the corporation prior to foreclosing on the mortgage. We affirm the grant of summary judgment for the mortgagors, precluding foreclosure on their residence.

The pleadings and affidavits, see Pa.R.Civ.P. 1035 pertaining to summary judgments, establish the following facts. Biggs, Inc., a new corporation, sought a $650,000 line of credit from Dollar Bank, appellant. On July 12, 1990, to secure the loan to Biggs, Inc., Myron and Laurel Swartz, appellees, executed three documents making them secondary obligors on the loan to the corporation. They signed a guaranty and suretyship agreement, a mortgage on their residence, and a demand note. With one exception, these were familiar commercial documents on forms provided by the bank, with boilerplate language furnishing abundant protection to the bank. On the guaranty and suretyship agreement, the following special clause was typed on the printed form:

> In the event of Default under the Line of Credit, the Security Agreement or this Guaranty and Suretyship Agreement, then Bank will first make a reasonable effort to recover its security and the indebtedness from the sale of the Inventory of Biggs, Inc. prior to foreclosing on Guarantors' residence, . . . or otherwise moving against Guarantor's other personal assets.

This clause is referred to by the parties as the "personalty first" provision.

Less than a year later, Biggs, Inc., was forced into involuntary bankruptcy under the federal bankruptcy code. The bank petitioned the bankruptcy court to lift the automatic stay in order to permit the bank to recover the balance of its loan from the assets of the debtor corporation. The trustee resisted, alleging that Dollar Bank had no appropriate priority for its petition due to its failure to perfect its security interest in the corporation's assets. The bank's financing statements, necessary to perfect its security interest, identified the debtor by various fictitious names or trade names used by Biggs, Inc., rather than by the corporate name. Dollar Bank, recognizing that its failure to perfect its security interest destroyed its priority under the bankruptcy code, rendering it futile to

continue its efforts to collect the debt from the corporation, commenced this mortgage foreclosure action against the residence of the secondary obligors, the Swartzes.

The Swartzes pleaded that the "personalty first" provision of the guaranty and suretyship agreement precluded mortgage foreclosure, claiming it was the reasonable responsibility of the bank to perfect its security interest in the corporation's assets in order to protect the priority of its claims against those assets. The bank's unreasonable failure to file proper financing statements violated the "personalty first" clause and foreclosed the bank's right to proceed against the Swartz residence.

Dollar Bank asserted that the mortgage was an independent document, to be interpreted independent of the guaranty and suretyship agreement with its "personalty first" provision, which properly validated this foreclosure action, an *in rem* or *de terris* proceeding. Alternatively, the bank claimed that, prior to bringing this action, it made a reasonable effort to collect the indebtedness from the corporation but was forestalled by the existence of higher priority claims, thus complying with the "personalty first" provision of the guaranty and suretyship agreement.

Both parties sought summary judgment on the pleadings and affidavits. The trial court granted summary judgment for the Swartzes, holding that compliance with the "personalty first" clause of the guaranty and suretyship agreement was a condition precedent to mortgage foreclosure, and that the bank failed to comply with the clause. The Superior Court affirmed on the opinion of the trial court.

■ The trial court opinion lucidly explains why the security documents executed by the Swartzes must all be interpreted with reference to each other and why the mortgage is subject to the "personalty first" provision of the guaranty and suretyship agreement though the mortgage makes no mention of the provision: "The documents in question ... reveal with complete clarity the parties' mutual intention and agreement that collateral pledged by the terms of the mortgage should be

seized only upon satisfaction of conditions included in the Guaranty." *See International Milling Co. v. Hachmeister, Inc.,* 380 Pa. 407, 110 A.2d 186 (1955).

The second issue, whether the bank made reasonable efforts to seek satisfaction of the debt from corporate assets, is more difficult. The trial court focused on the fact that Dollar Bank abandoned its efforts to collect from the bankrupt debtor, withdrawing its petition to lift the stay, when the bank's priority was challenged due to its failure to perfect its security interest. It was not unreasonable to abandon what promised to be a futile effort in the bankruptcy proceeding. The real question is whether it was unreasonable for a commercial lender to file defective financing statements under the Uniform Commercial Code, thereby failing to perfect its security interest, thence making it impossible to collect the debt from the assets of the bankrupt corporation.

Though perfection of a security interest under the Uniform Commercial Code is a technical affair, the necessary financing statements are routine documents in the commercial world, and though the defect in the financing statements—identification of the debtor by trade name rather than corporate name—was arguably a technical one, proper preparation of such financing statements is a routine commercial activity. "Perfection" is a term used by the UCC to describe the recording of a security interest for the purpose of notifying other creditors and potential creditors of such security interest, and has the effect, under the bankruptcy code, of protecting the priority of the secured creditor. Perfecting a security interest under the UCC is done to protect other lenders by informing them that the debtor's assets are subject to prior secured claims; this purpose cannot be achieved if the documents, called financing statements, are publicly recorded under names other than the official name of the debtor. Appellant failed to comply with the Pennsylvania Commercial Code, 13 Pa.C.S. § 9402(g), which provides: "**(g) Sufficiency of name of the debtor.**—A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it

adds other trade names or the names of partners." The official comment thereto, dated 1972, states: "Trade names are deemed to be too uncertain and too likely not to be known to the secured party or person searching the record, to form the basis for a filing system." There is nothing obscure about these requirements.

The bank's use of trade names rather than the name of the debtor, Biggs, Inc., failed to fulfill the requirements of the Commercial Code, and resulted in failure to perfect the bank's security interest. This, in turn, resulted in the bank's loss of priority as a secured creditor in the bankruptcy proceeding. This can only be viewed as a blunder on the part of the bank. Under the facts of this case, the failure to perfect the security interest of the bank was per se unreasonable. Moreover, under the circumstances of this transaction, the filing of the UCC financing statements was totally the assumed responsibility of the bank. We therefore conclude that the trial court and Superior Court did not err in holding that the bank failed to expend reasonable efforts to collect the indebtedness from the corporate debtor prior to initiating this foreclosure action.

One question remains. That is, whether the assets of the bankrupt debtor secured by Dollar Bank would have been sufficient to satisfy the claims of the bank had the bank perfected its security interest therein. The bank claims that summary judgment in favor of the Swartzes was improper in that—assuming compliance with the "personalty first" provision, that is, proper perfection of Dollar Bank's security interest and consequent collection from the bankrupt debtor's estate—the record fails to show that the indebtedness would have been fully satisfied in the bankruptcy proceeding, so the bank argues that mortgage foreclosure should be permitted in order to satisfy the remainder of the debt.

Appellant, however, did not present this issue to the trial court in post-trial motions or in the Pa.R.A.P. 1925(b) statement of matters complained of on appeal, and thus neither the trial court nor the Superior Court addressed the issue. Appellant has failed to comply with Pa.R.A.P. 302,

2117(c), and 2119(e). This constitutes a waiver of the issue. *See Commonwealth, Dep't of Transportation v. Boros,* 533 Pa. 214, 221–22, 620 A.2d 1139, 1143 (1993) ("An appellate court does not sit to review questions that were neither raised, tried, nor considered in the trial court."); *Reilly by Reilly v. SEP-TA,* 507 Pa. 204, 214–15, 489 A.2d 1291, 1296 (1985) ("Issues not preserved for appellate review cannot be considered by an appellate court even though the alleged error involves a basic or fundamental error."); *Kimmel v. Somerset County Comm'rs,* 460 Pa. 381, 384, 333 A.2d 777, 779 (1975) ("It is a fundamental principle of appellate review that we will not reverse a judgment or decree on a theory that was not presented to the trial court."); Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). This is not a rule without a reason. "To maximize our efficiency and to maintain and enhance the quality of our dispute resolution process, strict compliance with the procedures designed for issue preservation is essential." *Tagnani v. Lew,* 493 Pa. 371, 376, 426 A.2d 595, 597 (1981). The record in this case does not contain the facts necessary to evaluate the validity of appellant's argument on this issue, the predictable and fatal result of failure to present the issue in the trial court.

Accordingly, we must affirm the judgment of the Superior Court.

Judgment affirmed.

NIX, C.J., concurs in the result.

MONTEMURO, J., is sitting by designation.